**SUMMA CORPORATION d/b/a Frontier Hotel, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 79–7324, 79–7436.

United States Court of Appeals, Ninth Circuit.

Submitted July 2, 1980.

Decided Aug. 12, 1980.

William F. Spalding, Los Angeles, Cal., argued, for petitioner; Gibson, Dunn & Crutcher, Los Angeles, Cal., on brief.

J. Keith Gorham, Janet C. McCaa, Washington, D. C., for N. L. R. B.

Before HUG and FERGUSON, Circuit Judges, and EAST *, Senior District Judge.

HUG, Circuit Judge:

The National Labor Relations Board found that Summa Corporation d/b/a Frontier Hotel, unlawfully refused to bargain with Teamsters Local 14, in violation of section 8(a)(1) & (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (5). Summa admits its refusal to bargain but challenges the validity of the representation election through which the Union was certified as exclusive bargaining agent. The Board overruled all of Summa's objections to the election; a hearing was held on only one of the objections.

Summa petitions this court for review of the Board's order directing Summa to bargain with the Union, and the Board cross-applies for enforcement of its order. We grant the petition for review and deny enforcement of the Board's order.

I

Summa and the Union entered into a written stipulation authorizing a consent election to determine whether the Union should be certified as the exclusive bargaining agent for certain casino employees working at Summa's facility in Las Vegas.[1] The Union won the representation election by a vote of 120 to 94.

Summa filed objections to the election, alleging that the Union had engaged in material misrepresentations during the election campaign, and that the Board agent conducting the election had allowed Union observers and supporters to engage in misconduct during the voting period, tending to destroy the laboratory conditions necessary for a fair election. Principal among Summa's claims of election misconduct is its allegation that the Board agent improperly allowed the Union to employ a greater number of observers than Summa employed, in breach of the parties' agreement in the election stipulation that an equal number of observers would be allowed for each party.

On the recommendation of the Regional Director, the Board ordered a limited hearing on Summa's allegation that Union observers had engaged in prolonged conversations with prospective voters in violation of the Board's rule set forth in *Milchem, Inc.,* 170 N.L.R.B. 362 (1968). The Board overruled all the other objections without a hearing. After a hearing on the objection relating to the *Milchem* rule, the Board overruled that objection and certified the Union as exclusive bargaining agent.

Summa refused to bargain with the Union, and the Union charged Summa with violating section 8(a)(1) & (5) of the Act. Noting that Summa's election objections had been litigated in the previous proceedings, the Board granted summary judgment for the Union and ordered Summa to bargain with the Union.

II

■ We will enforce the Board's order if the Board correctly applied the law and if

---

* The Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation.

1. The parties entered into a "STIPULATION FOR CERTIFICATION UPON CONSENT ELECTION," authorizing an election pursuant to section 102.62(b) of the Board's Rules and Regulations. *See* C. J. Morris, *The Developing Labor Law,* at 183 (1971). The standards announced in this decision are not necessarily applicable to review of a "pure consent" election conducted pursuant to section 102.62(a) of the Rules and Regulations.

its findings of fact are supported by the record as a whole. *NLRB v. Metro-Truck Body, Inc.*, 613 F.2d 746, 748 (9th Cir. 1979), cert. denied, —— U.S. ——, 100 S.Ct. 2987, 65 L.Ed.2d —— (1980). Specifically, we will enforce the Board's bargaining order if the Board properly overruled Summa's objections to the election. *See Heavenly Valley Ski Area v. NLRB*, 552 F.2d 269, 271 (9th Cir. 1977).

The Board enjoys broad discretion in conducting representation elections and ruling upon election objections. *Metro-Truck Body, Inc.*, 613 F.2d at 748; *NLRB v. Miramar of California, Inc.*, 601 F.2d 422, at 425 (9th Cir. 1979). An election will be set aside only if the election process is "significantly impaired." *NLRB v. Heath Tec Division/San Francisco*, 566 F.2d 1367, 1372 (9th Cir.), cert. denied, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978).

The election stipulation provides that Summa and the Union:

> will be allowed to station an equal number of authorized observers . . . at the polling places during the election to assist in its conduct, to challenge the eligibility of voters, and to verify the tally.

According to the undisputed facts, this section of the stipulation was breached. On the morning of the election, two observers for each party initially were present at the polls. Just before the morning session of voting began, another person appeared and informed the Board agent that he had been invited by the other two union observers to act as a third observer for the Union. Without consulting the observers for Summa, the Board agent assented to the newcomer's request to act as a third observer. Throughout the morning voting session, three observers for the Union and only two observers for Summa were present at the polling place. Summa complained, and the Board agent limited each party to two observers during the afternoon voting session.

Summa argues that the imbalance of the number of observers created the impression of Union predominance, and of partiality on the part of the Board agent in favor of the Union. Because we find this breach of the election stipulation to be material, we hold that the election must be set aside.

A party to an agreement authorizing a consent election is entitled to expect that other parties and agents of the Board will diligently uphold provisions of the agreement that are consistent with Board policy and are calculated to promote fairness in the election. *See generally Delta Drilling Co. v. NLRB*, 406 F.2d 109, 114 (5th Cir. 1969); *M. W. Breman*, 115 N.L.R.B. 247 (1956). We agree with the current position of the Board that, despite the broad language used in *M. W. Breman, id.*, an election will not be set aside for every breach of an election agreement. Rather, election results should be overturned only if the breach is material or prejudicial, in the sense that the conduct causing the breach significantly impairs the fairness of the election process. *See Grant's Home Furnishings, Inc.*, 229 N.L.R.B. 1305 (1977). *Compare Barceloneta Shoe Corp.*, 171 N.L.R.B. 1333 (1968) *with Westinghouse Appliance Sales & Service Co.*, 182 N.L.R.B. 481 (1970).

We find that the stipulation providing for an equal number of observers is material to the election process. The language of the stipulation itself indicates that the parties intended to rely upon their observers to carry out the important functions of challenging voters and generally monitoring the election process. Each party reasonably desired to prevent the other from enjoying a relative advantage in this function. Moreover, we agree with Summa that there is a significant risk that an imbalance in the number of observers, with the acquiescence of the Board agent, could create an impression of predominance on the part of the Union and partiality on the part of the Board.

In these circumstances we find it unnecessary to remand to the Board for a hearing to determine whether the breach of the election stipulation resulted in any actual prejudice to Summa. There is no dispute that the breach actually occurred. The impact that the breach had upon the minds of voters would be difficult to prove. We think that a party to a consent election,

reasonably anticipating this difficulty of proof, has a right through pre-election contract to guard against misconduct material to the election process.[2]

Summa is entitled to insist that the Board and all parties adhere to provisions of the election stipulation that are designed to ensure a fair election. We will set aside an election for a material breach of such a provision, without requiring a showing of actual prejudice.[3]

The petition for review is granted, and the cross-application for enforcement is denied.

---

2. A rough analogy may be made to the liquidated damages clause in a commercial contract. Anticipating the difficulty of proving the damages resulting from the failure of performance promised by the obligor, the obligee may insist that the parties agree to fixed damages for breach, obviating the need to prove actual damages. In the election context the parties have agreed upon the elements important to a fair election and are entitled to insist upon the performance of the material provisions of the agreement, even though they may not be able to demonstrate specifically how the failure to perform adversely affects the fairness of the election.

3. We have cited *Grant's Home Furnishings, Inc.*, 229 N.L.R.B. 1305 (1977) for the proposition that the breach of an election stipulation must be material or prejudicial before relief will be granted. However, we do not necessarily adopt the Board's apparent position in that decision, that a consent election will be set aside only if the conduct in breach of the election agreement would warrant setting aside the election, if it occurred in a Board-conducted election. *See id.* at 1306. Accordingly, we do not decide whether, in absence of breach of an election agreement, an imbalance in the number of observers would warrant setting aside an election, with or without a showing of actual prejudice.