**NEW ENGLAND LUMBER DIVISION OF DIAMOND INTERNATIONAL CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–1619.

United States Court of Appeals, First Circuit.

Heard March 2, 1981.

Decided April 21, 1981.

Rehearing and Rehearing En Banc Denied May 18, 1981.

Malcolm E. Morrell, Jr., Bangor, Maine, with whom Clare Hudson Payne, and Eaton, Peabody, Bradford & Veague, Bangor, Maine, were on brief, for petitioner.

Susan T. Papadopoulos, Atty., with whom William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Acting Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, William Wachter and Sandra Shands Elligers, Washington, D. C., Attys., were on brief, for respondent.

BREYER, Circuit Judge.

This case came before the court upon the petition of the New England Lumber Division of Diamond International Corporation ("Diamond") for review of an order of the National Labor Relations Board and the Board's cross-application for enforcement. The order requires Diamond to bargain collectively with the United Paper Workers International Union and its Local No. 80, AFL–CIO (the "Union"). Diamond based its refusal to bargain upon its claim that the Union was not validly chosen to represent its employees because the Union had an improper observer present at the representation election. We reject Diamond's claim and enforce the Board's order.

The dispute in the case concerns an observer designated by the Union at a representation election held in accordance with

an agreement or stipulation between the Union and the company. The election was held on October 25, 1979, at the stud mill operated by Diamond's New England Lumber Division. From the morning of the election, Diamond has consistently urged that the designation of the Union's president, Phillip Veilleux, an employee of Diamond's Penobscot Division, to act as the Union observer at the election, violated the specific provisions of the "Stipulation for Certification Upon Consent Election". It adds that a rerun of the election (which the Union won) must be ordered. In response to petitioner's objections, the Regional Director of the NLRB conducted an administrative investigation, and recommended that the objections be overruled. The Board adopted the Regional Director's Report.

Diamond's argument is based on paragraph 4 of the printed form stipulation,[1] prepared by the NLRB, entitled "United States of America, National Labor Relations Board, Stipulation for Certification Upon Consent Election". It states:

"4. OBSERVERS.—Each party hereto will be allowed to station an equal number of authorized observers, *selected from among the non-supervisory employees of the Employer*, at the polling places during the election to assist in its conduct, to challenge the eligibility of voters, and to verify the tally." (Emphasis added.)

Diamond argues that Veilleux is not a nonsupervisory employee of the "employer" within the meaning of the stipulation because Veilleux is a nonsupervisory employee of the *Penobscot Division* of Diamond, not its *New England Lumber Division*. Diamond argues that the Penobscot Division and the New England Lumber Division are autonomous entities operating within a large multinational corporation, and that it is the Lumber Division, not Diamond as a whole, which is the "employer" within the terms of the stipulation.

The facts related to the stipulation's meaning are as follows: First, the stipulation does not explicitly state whether the New England Lumber Division or the larger company is the "employer" within the terms of paragraph 4. However, the words "Diamond International Corporation, New England Lumber Division" were typed above the printed word "(Employer)" at the place on the form which calls for a signature.

Second, paragraph 8 of the form stipulation calls for the parties, presumably the employer, to "insert commerce facts" establishing that the employer is engaged in commerce within the meaning of Sections 2(6) and (7) of the National Labor Relations Act; and, the typewritten words inserted appeared to name Diamond International Corporation as the corporation. The remainder of the typed response in paragraph 8, however, limited the facts establishing effect on commerce to facts concerning the New England Lumber Division, not Diamond as a whole.[2]

Third, a letter from the NLRB to Diamond's New England Lumber Division and the Union enclosed the completed stipulation for signature. It stated in part:

"Enclosed in accordance with our telephone discussions is the Stipulation for Certification upon Consent Election . . . . Each party may designate an election observer. These observers must be non-supervisory employees."

The letter is not specific about whether nonsupervisory employees of any division of Diamond or only of its New England Lumber Division were intended to be qualified observers. But the letter is captioned "RE: DIAMOND INTERNATIONAL CORP., NEW ENGLAND LUMBER DIV."

 It is clear that the Board has discretion to interpret ambiguity in a Stipulation

---

1. Form NLRB–652 (8–77).

2. The paragraph 8 response reads:

"Diamond International Corporation is a Delaware corporation with offices in Passadumkeag, Maine where it is engaged in the manufacture of framing materials. It annually purchases materials valued in excess of $50,000 directly from points outside of Maine and annually ships materials valued in excess of $50,000 directly to points outside of Maine from its Passadumkeag location."

for Certification Upon Consent Election. *NLRB v. Detective Intelligence Service, Inc.*, 448 F.2d 1022, 1025 (9th Cir. 1971). In that case, the Ninth Circuit stated, "where a Stipulation is ambiguous, the Board has authority to interpret the agreement according to what it finds to have been the intent of the parties." *Id.* Whether the stipulation is sufficiently ambiguous here to warrant the Board's interpretation is uncertain, given the instances in the relevant papers where the "employer" is referred to as Diamond International Corporation, New England Lumber Division. But, we need not decide that question, for even if use of Veilleux as an observer was inconsistent with the terms of the stipulation, the NLRB's decision to accept the election results is still valid.

■ The NLRB has broad discretion in the conduct of representation elections. *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *NLRB v. Morgan Health Care Center*, 618 F.2d 127, 128 (1st Cir. 1980). The Board's determination can be set aside only for an abuse of discretion in determining that the election was fairly conducted. *See NLRB v. Mattison Machine Works*, 364 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961). In this instance, the relevant legal standard is whether any breach in the stipulation was sufficiently prejudicial or sufficiently material to warrant setting the election aside. Did a breach of the stipulation significantly impair the fairness of the election process? *Summa Corp. v. NLRB*, 625 F.2d 293, 295 (9th Cir. 1980); *Grant's Home Furnishings, Inc.*, 229 N.L.R.B. 1305 (1977).

The Board has found that any breach of the stipulation was immaterial: even if Veilleux is not an "employee" under the stipulation, his presence as an observer did not warrant setting aside the election. We cannot say that the Board abused its discretion in arriving at this conclusion. The

Board's determination rests upon the view that the stipulation—in limiting observers to "nonsupervisory employees of the employer"—is aimed primarily at preventing intimidation that might take place should the *employer* choose to have *supervisory* employees present. It is not aimed at stopping observers who are union officials.[3] Such an interpretation of the language is a reasonable one; nothing in the record indicates any conflict between that interpretation and the parties' intent. And the Board's view of the matter should be given weight in light of the fact that the Board itself wrote the stipulation; the parties adopted language that appeared in the Board's printed form. On this interpretation of the clause, the presence of a nonsupervisory Diamond employee from outside the New England Lumber Division as an observer, would, at worst, constitute a nonmaterial breach of the stipulation.

■ Diamond also argues that, if management is prohibited from sending supervisory employees to observe, so should the Union be prohibited from sending union officials to observe. There are obvious differences, however, between permitting a local union official to be present in the polling place during voting and permitting individuals closely identified with management to be there. The Board could reasonably conclude that the presence of supervisors in the polling place during voting, even in the role of observers, might create an atmosphere of fear or intimidation where the similar presence of a local union official would not. *See NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969). The Board has consistently held, with court approval, that the designation of a union official as observer does not warrant overturning an election unless there is evidence that the official engaged in improper conduct while acting in that capacity. *See Shoreline Enterprises v. NLRB*, 262 F.2d

---

3. Indeed, how could this standard language do so, for many employers will have union officials among their nonsupervisory employees? Of course, Diamond might argue that here it was aware that the language would protect it against observers who were union members. But the record does not suggest that it accepted the form language with such a purpose or effect in mind. And, had Diamond focused upon this effect in advance and sought it, why did it allow the definition of "employer" to remain somewhat ambiguous?

933, 942 (5th Cir. 1959); *NLRB v. E–Z Davies Chevrolet*, 395 F.2d 191, 193 (9th Cir. 1968); *Soerens Motor Company*, 106 N.L.R.B. 1388, 1389–90 (1953); *Dallas City Packing Co.*, 110 N.L.R.B. 8 (1954).[4] Thus, we find the Board's decision here reasonable, its application for enforcement is granted and Diamond's petition is denied.

---

4. Petitioner's reliance upon *Summa Corp. v. NLRB, supra*, is misplaced. There, an unequal number of observers was permitted in material breach of the election stipulation, over the company's objection, creating the "significant risk" of an impression of union predominance and of partiality on the part of the Board. There was no such inequality here.