708 F.2d 1436
 113 L.R.R.M. (BNA) 3157, 97 Lab.Cas. P 10,245
 ST. ELIZABETH COMMUNITY HOSPITAL, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Hospital and Institutional Workers Union Local 250, Service
Employees International Union, AFL-CIO, Intervenor.
 No. 82-7098.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1982.
Decided June 22, 1983.
 
 Thomas J. Dowdalls, San Francisco, Cal., for petitioner.
 Lynne Deitch, N.L.R.B., Washington, D.C., for respondent.
 David A. Rosenfeld, VanBourg, Allen, Weinberg & Roger, San Francisco, Cal., for intervenor.
 Petition from the National Labor Relations Board.
 Before TANG and POOLE, Circuit Judges, and THOMPSON,* District Judge.
 POOLE, Circuit Judge:
 
 
 1
 St. Elizabeth Community Hospital, of Red Bluff, California, petitions for review of a National Labor Relations Board decision and order finding violations of section 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) and (5) (the Act), and requiring the hospital to enter into collective bargaining with the union elected to represent hospital service and maintenance employees. The hospital contends that since it is owned and operated by a religious order of the Catholic Church, Board jurisdiction would produce excessive entanglement between government and religion in violation of the First Amendment's free exercise and establishment clauses. It also claims abuse of discretion by the Board in overruling the hospital's objections to a union representation election and error in rulings on challenges to ballots cast during the election.
 
 
 2
 We hold that the Board's assertion of jurisdiction over St. Elizabeth does not violate the First Amendment because it neither produces excessive government entanglement nor infringes the religious beliefs of those who own and operate the hospital. Further, we find no abuse of the Board's discretion in overruling the hospital's election objections and no error in the rulings on ballot challenges.
 
 I. FACTS
 
 3
 The Sisters of Mercy, a religious order of the Catholic Church, owns and operates St. Elizabeth. The hospital, a non-profit California corporation licensed by the state as an acute care hospital, is one of approximately 22 such facilities maintained by the Order's Omaha, Nebraska Provinciate.
 
 
 4
 In March 1977, Hospital and Institutional Workers, Local 250, SEIU, AFL-CIO (the union) filed petitions with the Board seeking to represent four groups of employees at St. Elizabeth. After a representation hearing, the Board's Regional Director defined four bargaining units at the hospital and directed that elections be held. St. Elizabeth requested the Board review the Regional Director's determinations that certain employees were eligible to vote. The Board denied review except that it directed that those employees whom the hospital contended were supervisors be permitted to vote subject to challenge.
 
 
 5
 The election was held on June 16, 1977. Three of the hospital's bargaining units rejected union representation but the fourth, consisting of service and maintenance employees, chose union representation by a vote of 43 to 35, with 14 challenged votes. The hospital filed objections to the election. The Board had permitted three head nurses and a supply supervisor, whom the hospital claimed were supervisors and not within the bargaining units, to vote subject to challenge. St. Elizabeth objected that the Board's failure to rule on their supervisory status before the election allowed other employees to believe they favored the union and prevented the hospital from using them to campaign against the union. St. Elizabeth further complained that union observers kept an unauthorized list of voters at the polls.
 
 
 6
 On August 30, 1977, the Regional Director overruled the hospital's election objections and made rulings on the challenged ballots. St. Elizabeth requested that the Board review this supplemental decision and for the first time asserted that the Board's assumption of jurisdiction violated both religion clauses of the First Amendment. The Board denied the hospital's request for review of the Regional Director's decision but deferred ruling on challenges to the vote of the supply supervisor pending a revised vote count. The revised tally yielded 45 votes for and 40 votes against union representation, with challenges to three votes unresolved.[1] The Regional Director certified the union as the bargaining representative of the service and maintenance employees on December 1, 1977.
 
 
 7
 On January 6, 1978, the Regional Director issued a complaint charging that St. Elizabeth had committed unfair labor practices in violation of section 8(a)(1) and (a)(5) of the Act by refusing to bargain with the union or to provide information essential to bargaining. The hospital admitted it had refused to bargain but denied it had refused to furnish the necessary information, and again challenged the Board's jurisdiction over it on First Amendment grounds.
 
 
 8
 In August 1978, the Board rejected the hospital's First Amendment defense as untimely and granted the General Counsel's motion for summary judgment, finding St. Elizabeth's refusal to bargain and provide information to be in violation of the Act and ordering the hospital to bargain with the union.
 
 
 9
 St. Elizabeth petitioned this court for review of the Board's order and the Board applied for enforcement. In St. Elizabeth Community Hospital v. NLRB, 626 F.2d 123 (9th Cir.1980), this court held, Sneed, J., dissenting, that the hospital's First Amendment challenge had been timely. This court remanded to the Board for development of facts relevant to the jurisdictional issue in light of NLRB v. Catholic Bishop, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).
 
 
 10
 The Board held a supplemental hearing following the remand and concluded that the Act authorized exercise of jurisdiction over St. Elizabeth and that its jurisdiction did not violate the First Amendment. The Board found that asserting jurisdiction over the hospital would cause only a slight risk of entanglement between government and religion and would not infringe free exercise of the religious beliefs of the Sisters of Mercy. It reaffirmed its prior decision and order requiring St. Elizabeth to bargain with the union.
 
 
 11
 St. Elizabeth again petitioned this court for review of the Board's supplemental decision and order. The Board cross-applied for enforcement and the union has intervened in the proceedings.
 
 II. JURISDICTION
 
 12
 St. Elizabeth claims that the Board cannot order it to bargain with the union because to allow the Board jurisdiction would produce the excessive government entanglement prohibited by the First Amendment's establishment clause and would impermissibly infringe upon the free exercise of the religious beliefs of the institution's owners in violation of the free exercise clause.
 
 
 13
 In reviewing the Board's initial decision and order, this court remanded the case to the Board in light of the Supreme Court's opinion in Catholic Bishop, 440 U.S. 490, 99 S.Ct. 1313. Catholic Bishop is not really applicable, however. The Supreme Court relied on the National Labor Relations Act's legislative history rather than constitutional grounds in holding that the Board did not have jurisdiction over lay teachers at Catholic high schools. The Court found "no clear expression of an affirmative intention of Congress" that the Act cover teachers in church-operated schools and held that the Board could not require parochial schools to recognize unions as bargaining agents for their teachers. 440 U.S. at 504-506, 99 S.Ct. at 1320-1322. Consequently, the Court never reached the issue of unconstitutionally excessive entanglement.
 
 
 14
 However, Congress expressed an unmistakable intention that the Act cover non-profit hospitals when it amended the Act in 1974 to include health care institutions.[2] 29 U.S.C. Sec. 152; Catholic Bishop, 440 U.S. at 505, 99 S.Ct. at 1321. In fact, during debate on that measure, the Senate rejected an amendment which would have exempted hospitals operated by religious organizations. 120 Cong.Rec. 12,968 (1974). This legislative history indicates an affirmative intention of Congress to subject church-operated hospitals to Board jurisdiction, raising constitutional issues left unresolved by Catholic Bishop. Although this court declined to decide the jurisdictional issue in St. Elizabeth, 626 F.2d 123, it is now ripe for resolution.
 
 
 15
 The establishment clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion...." It was designed to protect against "sponsorship, financial support, and active involvement of the sovereign in religious activity." Walz v. Tax Commission, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970); Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). However, "total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." Lemon, 403 U.S. at 614, 91 S.Ct. at 2112; Walz, 397 U.S. at 670, 90 S.Ct. at 1412. But while the "course of constitutional neutrality in this area cannot be an absolutely straight line ... we will not tolerate either governmentally established religion or governmental interference with religion." Walz, 397 U.S. at 669, 90 S.Ct. at 1411.
 
 
 16
 To determine whether the Act violates the establishment clause in conferring Board jurisdiction over the institution operated by this religious order, we apply the Supreme Court's three-part analysis: (1) the statute must have a secular purpose; (2) the statute's principal or primary effect must neither advance nor inhibit religion; and (3) the statute must not foster excessive government entanglement with religion. Lemon, 403 U.S. at 612-613, 91 S.Ct. at 2111; EEOC v. Pacific Press Publishing Ass'n, 676 F.2d 1272, 1281 (9th Cir.1982).
 
 
 17
 In this case the government activity easily passes the first two elements of the Lemon test. The purpose of the National Labor Relations Act is clearly secular--to minimize industrial strife burdening interstate commerce by protecting employees' rights to organize and bargain collectively. NLRB v. Jones & Laughlin, 301 U.S. 1, 42-43, 57 S.Ct. 615, 626-627, 81 L.Ed. 893 (1937). And the Act's primary effect is to require collective bargaining and reduce labor disruptions, rather than to promote or deter the acceptance or perpetuation of the Catholic faith.
 
 
 18
 However, determining whether a statute fails the third part of the Lemon test by fostering excessive government entanglement with religion requires consideration of several related but additional elements: the character and purpose of the institution affected, the nature of the activity the government mandates, and the resulting relationship between government and the religious organization.[3] Lemon, 403 U.S. at 615, 91 S.Ct. at 2112.
 
 
 19
 In Lemon, the Supreme Court applied these factors and concluded that state statutes providing state funding for church-owned schools were unconstitutional.[4] In finding unconstitutionally excessive entanglement between government and religion, the Court in Lemon emphasized that "parochial schools involve substantial religious activity and purpose" since they are a powerful means of propagating the Catholic faith by indoctrinating impressionable youths. Lemon, 403 U.S. at 616, 91 S.Ct. at 2113.
 
 
 20
 Unlike a church school, however, St. Elizabeth does not have a substantial religious character. Its primary purpose, like that of any secular hospital, is rather humanitarian, devoted to medical care for the sick. St. Elizabeth's principal function, unlike a parochial school, is to care and heal, not to indoctrinate and propagate Catholicism. Although the hospital is owned and operated by the Sisters of Mercy, neither their order nor the Catholic Church contribute financial support. Profession of Catholic faith is required neither of patients nor employees; of 250 employees, only four are nuns. Half of those on the hospital's Board of Directors (all of whom are selected by the Omaha Provinciate) are required to be Sisters of Mercy or "Mercypersons,"[5] but no religious qualification is imposed upon the remainder as long as they subscribe to the hospital's philosophy.
 
 
 21
 Crucifixes, Bibles and other religious symbols appear throughout the hospital, hospital meetings begin with prayer, and prayer is said over the public address system twice daily. But employees and patients are not required to participate in any religious service, and employees are not forced to perform any duties connected with religious services.
 
 
 22
 The Third and Eighth Circuits focused on such institutional characteristics in holding that the Board had jurisdiction over church-operated institutions providing medical and social care analogous to the services offered by St. Elizabeth. In Tressler Lutheran Home for Children v. NLRB, 677 F.2d 302, 305 (3rd Cir.1982), the court observed that the primary function of a nursing home affiliated with the Lutheran Church was care of the elderly and infirm and that the performance of direct patient care predominated over religious atmosphere.
 
 
 23
 The nursing home in Tressler did not require its patients and employees be Lutheran, 677 F.2d at 303, even as no similar qualification applies at St. Elizabeth. And, as at St. Elizabeth, the Tressler court found that although employees were oriented in the importance of the corporal works of mercy, there was no specific religious indoctrination of either patients or employees. Tressler, 677 F.2d at 304.
 
 
 24
 The Eighth Circuit found distinctions between a church-operated center for battered children and a Catholic school in NLRB v. St. Louis Christian Home, 663 F.2d 60 (8th Cir.1981). "The Home's activities relate only tangentially to the religious mission of the Christian Church, and inquiry into the operation of the Home should not intrude on any activity substantially religious in character. The Home operates in the same way as a secular childcare institution...." 663 F.2d at 65.
 
 
 25
 Our conclusion that Board jurisdiction would not produce excessive entanglement between government and religion results not only from St. Elizabeth's pervasively secular character, but also from our sense that Board involvement with the hospital will be limited and will present only a minimal burden upon the religious practices of the hospital's operators. Board jurisdiction will produce only incidental intrusion by requiring examination of St. Elizabeth's actions and conduct only with respect to specific charges which may be filed in the limited area of collective bargaining and labor relations. Certainly there is no prospect of continuing government surveillance of the type the Supreme Court condemned in Lemon, 403 U.S. at 619-621, 91 S.Ct. at 2114-2115. In addition, there is no evidence that union activities will interfere with the religious practices or beliefs of the Sisters of Mercy, since the tenets of the Catholic Church are not inconsistent with unionization or collective bargaining.
 
 
 26
 St. Elizabeth also contends that Board jurisdiction would violate the free exercise clause of the First Amendment, which provides that Congress enact no law prohibiting the free exercise of religion. However, a statute does not unconstitutionally inhibit the free exercise of religion merely because it affects the operations of a religious organization. United States v. Lee, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); Pacific Press, 676 F.2d at 1279. The test whether free exercise is threatened depends on factors similar to those examined under the establishment clause analysis. This court must weigh: (1) how much Board jurisdiction will interfere with the exercise of religious beliefs; (2) the existence of a compelling or overriding state interest justifying a burden on religious beliefs; and (3) whether accommodating those beliefs would unduly interfere with the fulfillment of the governmental interest. Lee, 455 U.S. at 257-259, 102 S.Ct. at 1055-1056; Pacific Press, 676 F.2d at 1279; EEOC v. Mississippi College, 626 F.2d 477, 488 (5th Cir.1980), cert. denied, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981).
 
 
 27
 We see no violation of the free exercise clause in sanctioning the Board's assertion of jurisdiction over St. Elizabeth because the minimal infringement of the hospital's freedom of operation is outweighed by the Act's goal of minimizing economic disruptions caused by labor unrest. Application of the Act will undoubtedly result in some intrusion on St. Elizabeth's operation, as in the case of any employer forced to bargain with a union. "However, the relevant inquiry is not the impact of the statute upon the institution, but the impact of the statute upon the institution's exercise of its sincerely held religious beliefs." Mississippi College, 626 F.2d at 488; Pacific Press, 676 F.2d at 1280. But the application of the Act here will have only limited impact on the exercise of the religious beliefs of the Sisters of Mercy. St. Louis Christian Home, 663 F.2d at 65; see also NLRB v. World Evangelism, 656 F.2d 1349, 1354 (9th Cir.1981) (applying Act to religiously affiliated commercial complex did not violate the First Amendment). Catholic doctrine does not counsel St. Elizabeth to commit unfair labor practices or to refuse to bargain with a labor union. Neither does the Act prohibit the hospital's prayers, crucifixes, moral values or refusal to perform abortions.
 
 
 28
 Furthermore, the government has a compelling interest in regulating labor relations so as to minimize industrial strife and disputes that would disrupt the national economy. Congress considered labor peace among non-profit health care institutions important enough to apply the Act to hospitals such as St. Elizabeth. See generally 120 Cong.Rec. 12,955-12,958 (1974). To allow St. Elizabeth an exemption would permit labor disagreements to threaten delivery of vital medical services and would interfere with the fulfillment of the government's compelling interest in promoting national labor peace.
 
 
 29
 Accordingly, we hold that the Board's assertion of jurisdiction over St. Elizabeth is authorized by its statutory charter and violates neither the establishment nor free exercise clauses of the First Amendment.
 
 III. ELECTION OBJECTIONS
 
 30
 We must therefore consider St. Elizabeth's assertions that the Board abused its discretion in overruling the hospital's objections to the election and that the Board erred in ruling on ballot challenges.
 
 
 31
 St. Elizabeth contended that its three head nurses and the hospital's central supply supervisor were supervisors within the meaning of the Act and so were not members of the bargaining units defined by the Board. But the Board deferred ruling on the status of the four until after the representation election and allowed them to vote subject to challenge. St. Elizabeth claims in this appeal that the Board's failure to resolve the status of these individuals prior to the election unfairly influenced the results because hospital employees were led to believe that those persons favored the union and because they could not be used to campaign against the union.
 
 
 32
 However, the Board acted reasonably when it rejected St. Elizabeth's election objection to its deferred determination of the supervisory status of the head nurses and supply supervisor. The procedure allowing an employee to vote subject to challenge is an accepted Board practice and will not be disturbed except for an abuse of discretion. NLRB v. Doctors' Hospital of Modesto, Inc., 489 F.2d 772, 776 (9th Cir.1973). St. Elizabeth has offered no evidence to establish that the Board abused its discretion in following long-established procedure in this case. The four individuals did not engage in recruiting union support, they merely attended union meetings and engaged in general discussions about union representation. In addition, the hospital was able to wage a campaign against the union vigorous enough to result in three of the four bargaining units rejecting union representation.
 
 
 33
 Furthermore, the votes of the four did not affect the outcome of the representation election. The union lost the election in the unit consisting of registered nurses, to which the three head nurses belonged. And while the central supply supervisor voted in the bargaining unit the union was elected to represent, her ballot was not counted in computing the union's five-vote margin of victory and was not necessary to the union's election.
 
 
 34
 St. Elizabeth also objected that the Board agents who conducted the election improperly permitted union observers to maintain lists of voters and to refer to those lists when employees arrived at the polls to vote. The list was impounded by a Board agent at the election's conclusion.
 
 
 35
 We find no abuse of discretion by the Board in ruling that the existence of the list did not require overturning the election. Except for the official eligibility list, no one is allowed to keep a list of eligible voters at a polling place during a representation election. Robert's Tours, Inc. v. NLRB, 578 F.2d 242, 244 (9th Cir.1978); Tom Brown Drilling Co., 172 N.L.R.B. 1267 (1968); Piggly-Wiggly # 011, 168 N.L.R.B. 792 (1967). However, there is no evidence that the union maintained a list of those who had or had not voted. Rather, the impounded list contained the names of voters the union intended to challenge. In Tom Brown Drilling, a similar list containing the names of voters whose ballots an employer intended to challenge was permitted. It is when an unauthorized list contains the names of all eligible or actual voters that a party keeping the list must show that none or only a small number of voters knew the list was being kept. Robert's Tours, 578 F.2d at 244.
 
 IV. BALLOT CHALLENGES
 
 36
 St. Elizabeth also appeals the Board's rulings on challenges to six ballots. We hold that the Board's rulings were correct.
 
 
 37
 The ballots cast by two employees were challenged by the hospital, which claimed that they had resigned before the election and should not have been allowed to vote. The Board overruled those challenges, thereby increasing the number of votes in favor of union representation from 43 to 45.
 
 
 38
 Eligibility to vote in a representation election is dependent upon employment in the bargaining unit during the eligibility period[6] and on the date of the election. NLRB v. Adrian Belt Co., 578 F.2d 1304, 1308 (9th Cir.1978).
 
 
 39
 Both employees had given notice before the election that they would resign, but neither left until after the election.[7] Both were employed during the eligibility period and on the date of the election, so the Board did not err in overruling the hospital's challenges to their ballots.
 
 
 40
 The ballots cast by four other employees were challenged by the union, which contended they were casual employees with sporadic and irregular work schedules. The Board agreed and sustained the union's challenges, and the votes of the four were not counted in computing election results.
 
 
 41
 Employees with a regular work schedule, even if they are part-time, may vote in a representation election. Shannon & Luchs and D.P.A. Associates, 66 N.L.R.B. 1011 (1967). However, employees whose working schedule is sporadic and intermittent rather than regular are not eligible to vote. Glynn Campbell d/b/a Piggly Wiggly El Dorado Co., 154 N.L.R.B. 445, 451 (1965); G.C. Murphy Co., 128 N.L.R.B. 908, 909-910 (1960).
 
 
 42
 The Board's decision that these employees were not eligible to vote is supported by the record in this case. Two of the employees worked only eight hours each in the three months preceding the election, another did not work in 15 of the 22 weeks before the June election, and the fourth employee did not work at all for 11 weeks in that same period.
 
 V. ST. ELIZABETH'S REQUEST FOR A HEARING
 
 43
 St. Elizabeth claims that even if the Board did not abuse its discretion in refusing to set the election aside or did not err in ruling on the ballot challenges, the Board should have granted a hearing on the election objections and ballot challenges.
 
 
 44
 The Board has broad discretion in conducting and supervising representation elections. Summa Corp. v. NLRB, 625 F.2d 293 (9th Cir.1980); Coronet-Western v. NLRB, 518 F.2d 31, 32 (9th Cir.1975). A hearing is not required in every case to determine the validity of objections to a Board-conducted election. The Board is required to grant an evidentiary hearing only where substantial and material factual issues are raised, and the party objecting to the election must supply the Board with evidence establishing a prima facie case for disturbing the results. South Pacific Furniture, Inc. v. NLRB, 627 F.2d 173, 175 (9th Cir.1980); NLRB v. Sauk Valley Mfg. Co., 486 F.2d 1127, 1130 (9th Cir.1973). The denial of an evidentiary hearing on election objections is to be overturned only for an abuse of discretion. Spring City Knitting Co. v. NLRB, 647 F.2d 1011, 1017 (9th Cir.1981).
 
 
 45
 The Board did not abuse its discretion in refusing St. Elizabeth a hearing on the election objections and ballot challenges because St. Elizabeth failed to establish the required prima facie case for disturbing the results of the election. It provided no substantial evidence which would warrant setting aside the election.
 
 
 46
 Accordingly, we affirm the Board's decision and order requiring St. Elizabeth to bargain with the union.
 
 
 47
 The Board's order is ENFORCED. The employer's petition for review is DENIED.
 
 
 
 *
 The Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 The Board overruled challenges to seven ballots. Five of those ballots had been challenged by the union, and so increased the vote total against representation from 35 to 40. Two of the seven had been challenged by the hospital, and when they were overruled the vote total in favor of union representation increased from 43 to 45. Since the three deferred challenges could not affect the result, the Regional Director certified the union as the bargaining representative of the service and maintenance employees
 
 
 [2]
 Before the 1974 amendments, 29 U.S.C. Sec. 152(2) specifically exempted from the Act's coverage "any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual." The 1974 amendments removed that exclusion
 
 
 [3]
 Although claims of establishment clause violations usually occur in the context of government activities that benefit a religious organization, the Lemon test can also apply when a statute potentially burdens religious activity. Catholic Bishop, 440 U.S. at 500-502, 99 S.Ct. at 1318-1320; EEOC v. Mississippi College, 626 F.2d 477, 487 (5th Cir.1980), cert. denied, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981)
 
 
 [4]
 A Pennsylvania statute provided that the state would reimburse non-public elementary and secondary schools for the cost of teachers' salaries, textbooks and instructional materials in specified secular subjects. A Rhode Island statute provided for direct payments of salary supplements to teachers in non-public elementary schools. Lemon, 403 U.S. at 606-607, 91 S.Ct. at 2108-2109
 
 
 [5]
 A Mercyperson is an individual who has embraced the philosophy of the Sisters of Mercy. The hospital's nine directors presently include four Sisters of Mercy and one Mercyperson
 
 
 [6]
 The Regional Director's direction of election defined the eligibility period here as the payroll period ending immediately preceding the date the election was directed, May 20, 1977, and included employees who did not work during that period because they were ill, on vacation, or temporarily laid off
 
 
 [7]
 The election was held June 16, 1977. One employee whose ballot was challenged did not leave until June 18 and the second left June 30