NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MIDWEST TELEVISION, INC., STA-
TION WMBD–AM–FM–TV,
Respondent.

No. 15616.

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Glen M. Bendixsen, Attorney, N. L. R. B., for petitioner.

Robert D. Morgan, Davis, Morgan & Witherell, Peoria, Ill., for respondent.

Before HASTINGS, Chief Judge, and SWYGERT and FAIRCHILD, Circuit Judges.

SWYGERT, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order issued against Midwest Television, Inc., Station WMBD-AM-FM-TV, Peoria, Illinois.[1] The Board's order was based upon its finding that Midwest violated sections 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158 (a) (5) and (1), by refusing to bargain with the unions [2] jointly certified as the exclusive bargaining representative of a unit of Midwest's employees. The refusal to bargain is admitted. The question relates to the sustaining of challenges to two ballots cast at a consent election won by the unions by a single vote and resulting in the unions' certification.

[1] The Board's initial decision is reported at 144 N.L.R.B. 972; its supplemental decision is reported at 150 N.L.R.B. 413.

[2] American Federation of Television and Radio Artists, AFL-CIO and Local 1292, International Brotherhood of Electrical Workers, AFL-CIO.

Following a petition to the Board for an election, the company and the unions entered into a "stipulation for certification upon consent election" which was approved by the regional director of the Board. The stipulation defined the appropriate unit for purposes of the election as follows:

All persons employed by the Company * * * who appear in any manner on a regular basis in services before the microphone or camera including but not limited to those who speak, act, sing or in any manner perform as talent as such terms are used and understood in the broadcasting industry. * * *

The company prepared a list of proposed eligible voters, but the unions refused to accept it and challenged a number of the ballots cast at the election held on December 4, 1961. The Board ultimately sustained five of the challenges and tallied the remaining ballots at twelve votes for the unions and eleven against. The unions were then certified.

The company refused to bargain and reasserted its objection to the sustaining of the challenges at the resulting unfair labor practice proceeding. Thereafter, in a supplemental decision,[3] the Board again overruled the company's objection. It found that two of the five employees whose ballots had been successfully challenged, Richards and Budd, were not included in the stipulated unit, in the Board's own words,

because their appearance on weekly shows constituted an insignificant part of their normal duties, and amounted to so little air time as to be insufficient to create a real community of interest with employees whose regular duties required frequent appearances before the microphone or camera.

In this review the company contends that the test applied by the Board was an improper standard to determine inclusion in the unit defined by the stipulation.

The Board concedes that Richards and Budd are included within the literal description of employees embraced by the stipulated unit, in that they are employees who appear "on a regular basis" performing services before the microphone or camera. The record shows that Richards regularly served on a half-hour Saturday morning children's program on the radio, first interviewing children in the audience and later contributing running conversation with the program's "main talent" to his radio-audience exposure. Employee Budd's voice and a distorted image of him were used to portray an eerie character who served as a host on a weekly horror movie program on television.[4] The Board, however, points to the facts that Richards' principal employment was as a continuity writer, that Budd's duties engaged him almost exclusively as a TV film librarian, and that both of these men received special, limited compensation for their services before the microphone and camera. From these facts the Board argues that Richards and Budd were properly excluded from the stipulated unit because the quantity of unit work they performed was so insignificant in relation to their principal employment duties that they shared no "community of interest" with employees in the stipulated job description.

A very similar argument was presented to, and rejected by, this court in NLRB v. J. J. Collins' Sons, Inc., 332 F.2d 523 (7th Cir. 1964). We think Collins is controlling here and requires that enforcement of the Board's order be denied. In that case the Board overruled a challenge to a ballot cast in a representation election even though the employee challenged was not within the description of the unit stipulated by the

3. The Board at first declined to reconsider the challenges and determined that the company had violated sections 8(a) (5) and (1) of the act. Later it granted the company's motion for reconsideration and remanded the proceeding for an evidentiary hearing with respect to the duties of the five employees successfully challenged.

4. In addition, both Richards and Budd taped commercial messages several times a month for use on the air.

parties on the ground that his "community of interest * * * strongly allied" him with employees in the unit designated. We denied enforcement of a Board order stemming from the company's subsequent refusal to bargain, stating:

> [T]he bargaining unit here involved was defined and its limits circumscribed by stipulation of the company and the Union. And the Board's exercise of discretion was restricted by the Board to its approval of the unit as submitted by the parties. The factor of "community of interest" * * * might well have formed a rational basis for having included the [employee's] job in the unit under some descriptive designation identifying it. But the Board did not do so. * * * [C]onsiderations applicable when the Board makes its own independent determination defining the appropriate bargaining unit do not control here where it is merely interpreting the language used by the parties to define and limit the unit in a stipulation for a consent election. The primary question here is what the parties intended. Id. at 525.

Other circuits have also refused to permit the Board to apply a "community of interest" standard in cases relating to unit descriptions entered into by stipulation. Tidewater Oil Co. v. NLRB, 358 F.2d 363 (2d Cir. 1966); NLRB v. Schapiro & Whitehouse, Inc., 356 F.2d 675, 676–677 (4th Cir. 1966). In the *Tidewater Oil* case, the Second Circuit stated:

> We view community of interest as a doctrine useful in drawing the borders of an appropriate bargaining unit, a function well within the discretion of the Board. But we do not conclude that the doctrine remains as an established Board policy sufficient to override the parties' intent when the Board, in the interests of furthering consent elections, allows the parties to fix the unit. 358 F.2d at 366.

■ "Community of interest" is indeed a fundamental consideration in selecting an appropriate unit. Doubtless when parties stipulate to the composition of a unit they are attempting among other things to apply "community of interest" as they see it under the circumstances. And "community of interest" would be an appropriate consideration when the Board approves or disapproves of a stipulation.

■■ We think, therefore, that if a stipulation proved to be ambiguous as applied to particular employees, the Board could properly resort to "community of interest" in resolving the ambiguity. Here, however, the stipulation included, by clear and unambiguous language, all employees who appear regularly "in any manner" before the microphone or camera. The Board therefore erred in excluding Richards and Budd from the unit for purposes of the representation election by departing from the clearly expressed intention of the parties. Since the winning margin of the election was a single vote, certification of the unions is invalid.

Enforcement of the Board's order is denied.