**KNAPP–SHERRILL COMPANY, Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

No. 73–1358.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1974.

Rehearing Denied March 18, 1974.

R. Glenn Jarvis, McAllen, Tex., for petitioner.

Marcel Mallet-Prevost Asst. Gen. Counsel, Elliott Moore, Deputy Associate

Gen. Counsel, N. L. R. B., Washington, D. C., Willard I. Boss, Clifford Potter, NLRB, Region 23, Houston, Tex., William R. Stewart, Washington, D. C., for respondent.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Knapp-Sherrill Company (the Company) asks that we review and set aside a Board order[1] finding it in violation of Section 8(a)(5) and (1) of the National Labor Relations Act, as amended, (Title 29, U.S.C., Sec. 151 et seq.) for refusal to bargain with the Union[2] certified by the Board as the exclusive bargaining representative of the Company's employees in an appropriate unit. The board has filed a cross-application for enforcement of its order.

The dispute centers around the proper construction to be accorded to a "Stipulation for Certification upon Consent Election" between the Union and the Company under which the pre-election hearing provided for in Section 9(c)(1) of the Act was waived, the parties agreeing to proceed directly to an election in an agreed-upon bargaining unit which included "[a]ll production and maintenance employees, including warehousemen and truck drivers, employed at the Employer's facilities at . . . Donna, Texas." The Stipulation contained standard printed language stating that the election "shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board." With regard to voter eligibility the Stipulation provided:

"The eligible voters shall be those employees included within the Unit . . . who were employed during the payroll period indicated below [March 31, 1971], including employees who did not work during the payroll period because they were ill or on vacation or temporarily laid off . . . but excluding any employees who have quit or been discharged for cause . . . ."

A secret-ballot election was conducted pursuant to the Stipulation on April 29, 1971, in which the Tally of Ballots disclosed that 85 votes were cast for the Union, 84 against. 18 ballots were challenged by the Board agent because the names of the voters casting them did not appear on the eligibility list supplied by the Company. Because there were sufficient challenged votes to affect the election's result, the Board's Houston, Texas, Regional Director investigated the challenges and concluded that substantial issues of fact and law were involved and directed a hearing be held. A hearing ensued before a duly designated Hearing Officer, at which all parties appeared and participated.

The Hearing Officer recommended to the Board that challenges to five of the ballots be sustained but that the challenges to the remaining 13 ballots be overruled and the votes counted. Of these 13 ballots, 11 were cast by so-called "temporary seasonal" employees and one by a "regular seasonal" employee.[3] The Company argued initially that all 13 were ineligible under the Stipulation, but now questions only the votes of the 11 "temporary seasonal" employees.

The Company processes and cans tomatoes, carrots, beets, green beans and citrus juice at various seasons of the year and its need for employees varies considerably with weather and crop conditions. Its two departments, produc-

1. Reported at 201 NLRB 20.

2. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local 173.

3. The thirteenth ballot was cast by an employee on military leave on the eligibility date and is not here in issue. The single ballot of the "regular seasonal" employee, Juanita De LaGarza is no longer questioned by the Company.

tion and warehouse, have a combined total of 50 to 60 regular employees who work full time. At the start of the canning of a particular crop this regular work force is supplemented by about 30 to 35 workers considered by the company as "regular seasonals" who work on the processing of all vegetables. During the early summer six weeks tomato canning season numerous additional employees, 170 to 200 in 1970, for example, are needed. These are called "temporary seasonals" by the Company and they are often used for canning other vegetables than tomatoes during various times of the year. These temporary seasonals are not carried on the payroll records except when they are working but when the workload increases hiring preference is given to those who have worked for the Company in the past. As a result many temporary seasonals work for the Company on a regular basis during the busy seasons. An assistant manager testified "they are generally hired year after year because of their ability to perform the duties that they do perform". He added that while the Company's business may fluctuate, they have a regular need for temporary seasonals at least during the tomato season. This is confirmed by the work history of the temporary seasonals whose ballots are at issue. Most of these have worked at least three or four years for the Company and some have worked there for as many as twenty years.

The Hearing Officer concluded that " 'temporary seasonals' worked under the same general conditions as the regular seasonals whose eligibility is not questioned. The difference rests only in the circumstance that their periods of employment were shorter and less certain than those of the 'regular seasonals' . . . Because of [their] work history and because the record otherwise demonstrates that each had a reasonable expectation of substantial employment from year to year, I find that they shared a community of interest with the Employer's regular work force and the 'regular seasonals'."

The Board (Chairman Miller dissenting) overruled the Company's exceptions to the Hearing Officer's Report and Recommendations and on May 15, 1972, issued its Decision and Direction adopting the Hearing Officer's recommendation that the 13 ballots be opened and counted.[4] The Regional Director opened the ballots and issued a revised tally showing 93 votes for and 88 votes against the Union, to which the Company again objected. The Regional Director recommended that the Board overrule the objection and certify the Union, which action the Board took on June 20, 1972.

The Company thereafter refused to bargain with the Union as the representative of the employees in the certified unit, whereupon the Union filed charges of refusal to bargain in violation of Section 8(a)(5) and (1) of the Act. The Board—over Company opposition requesting a hearing on the ground that it had "evidence which was previously unavailable at the hearing on the challenged ballots, and which is highly pertinent to the issues involved in the case"—granted summary judgment and held that the Company had violated Section 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the duly certified representative of its employees in an appropriate unit. The Company was ordered to cease and desist from the unfair labor practices found, to bargain on request and to post appropriate notices. To insure that the employees in the appropriate unit will receive the services of their selected bargaining agent for a reasonable time, the Board fixed the initial period of certification to begin on the date when the Company commences to bargain in good faith with the Union.[5]

4. 196 NLRB No. 106.

5. See Mar Jac Poultry Co., Inc., 136 NLRB 785 (1962); NLRB v. Commerce Co., 5 Cir. 1964, 328 F.2d 600, 601, cert. denied, 379 U.S. 817, 85 S.Ct. 32, 13 L.Ed.2d 28; Burnett Construction Co., 149 NLRB 1419, 1421 (1964), enforced, 10 Cir. 1965, 350 F.2d 57.

■ The Company's conceded refusal to bargain is based entirely on the contention that the Board's certification of the Union is invalid. It contends that the Board erred in determining which employees were eligible to vote in the election. The Company bears the burden of establishing that the Board's eligibility determination was erroneous. NLRB v. Hondo Drilling Company, 5 Cir. 1970, 428 F.2d 943, 946; NLRB v. Bar-Brook Mfg. Co., 5 Cir. 1955, 220 F.2d 832, 834; NLRB v. Atkinson Dredging Co., 4 Cir. 1954, 329 F.2d 158, 163–164, cert. denied 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736.

■ The Stipulation controls unless its provisions are repugnant to the Act or to settled Board policies. As noted the agreement provided that "temporarily laid off" employees are eligible to vote. The dispute in the Board's proceedings and before us is as to whether particular employees are within this eligibility classification. Absent clear evidence of the parties' intention to apply some other test, the Board, we think, properly resolved this eligibility question in the same manner as in other cases where the eligibility of employees who do not work full time is in issue, namely, by determining the extent to which these employees share a community of interests with bargaining unit employees. Congress has granted the Board a "wide degree of discretion" in resolving such disputes. NLRB v. A. J. Tower Co., 1946, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322, 327.[6] We think that the Board's disposition of the challenged ballots was correct and well "within the sound discretion of the Board". NLRB v. Tri-Service Drilling Co., 5 Cir. 1970, 432 F.2d 1271, 1274. The challenged employees had a reasonable expectation of recall so as to justify their inclusion in the bargaining unit. Although the Company's business fluctuated it had a recurring yearly need for temporary seasonals during the tomato season and often during other seasons as well. All the challenged employees came from the same local labor market and all had worked for the Company in past years, some for twenty years or more. Each had been employed in 1971 prior to the March 31 eligibility date and following a brief layoff about that time were in fact recalled to work. While the Company does not maintain a recall list of temporary seasonals, there is support in the record for the Hearing Officer's finding that its supervisors are directed to give hiring preference to former temporary seasonals who apply.

■■ Although the Company argues that "[t]he Board erred in deciding the challenges in terms of its customary rules rather than in terms of whether they were eligible to vote as provided by and as intended by the parties in the Stipulation for Certification . . .", we agree with the Board that its responsibility in stipulated unit cases is two-fold: "to ascertain the parties' intent with regard to the disputed employee and then to determine whether such intent is inconsistent with any statutory provision or with established Board policy". The Tribune Company, 190 NLRB No. 65, (1971); J. Olson Machine Co., 196 NLRB No. 89, (1972); Newhouse Broadcasting Corporation, 198 NLRB No. 60, (1972). In this case there is no evidence that the parties even discussed the inclusion or exclusion of temporary seasonal employees who were not working on the eligibility date, much less that they agreed on the issue. Instead the parties signed a Stipulation containing a standard eligibility clause which reflected, as the Hearing Officer noted, "uniform Board policy". Under that policy the Board, with the approval of this and other courts, has held that seasonal employees who are out of work because of a decline in their employer's business but who have a reasonable ex-

6. See NLRB v. Waterman S.S. Corp., 1940, 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704; NLRB v. Tri-Service Drilling Company, 5 Cir. 1970, 432 F.2d 1271, 1274, cert. den. 401 U.S. 940, 91 S.Ct. 941, 28 L.Ed.2d 221; Shoreline Enterprises of America v. NLRB, 5 Cir. 1959, 262 F.2d 933, 942.

pectation of reemployment in the future are considered "temporarily laid off" and eligible to vote in a representation election. NLRB v. Hondo Drilling Co., supra; NLRB v. C. H. Sprague & Son, Co., 1 Cir. 1970, 428 F.2d 938, 940; NLRB v. Jesse Jones Sausage Company, 4 Cir. 1962, 309 F.2d 664, 665–667; Brewer & Brewer Materials, Inc., 182 NLRB 788, 793 (1970), affirmed 6 Cir. 1971, 436 F.2d 1383. Inasmuch as the Company has not shown that the parties reached any understanding as to the meaning of the printed eligibility clause, we think the Stipulation should be construed as incorporating the Board rule.

We agree with the Board that no understanding of the ineligibility of this group of employees is shown by reason of the fact that only eleven temporary seasonals on layoff status attempted to vote. The Board correctly observed that temporary seasonals on layoff status

"were intentionally left off the eligibility list furnished by the Employer, because of the circumstance that they were not on the payroll on the agreed-upon eligibility date controlling for non-seasonal employees. Despite this, some of those in the temporary seasonal category but not on the Employer's list did cast ballots. Thus, to the extent that any failure to vote was caused by the action of any participant in the election process, the fault would appear to lie with the Employer in furnishing an incomplete eligibility list."

We hold that the Board properly construed the Stipulation in the light of established Board policy as approved by the courts. The Union was properly certified and the Company's refusal to recognize and bargain with the Union as the exclusive bargaining representative of its employees in an appropriate unit was a violation of Section 8(a)(5) and (1) of the Act. The Company's petition for review is denied and the Board's Order of January 12, 1973, is directed to be enforced in full.

Petition denied. Cross-Application for Enforcement granted.