© 1983 DIRECTORY SERVICE CO. CHAMPAIGN CO. FORD COUNTY, ILLINOIS

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SPEEDWAY PETROLEUM, DIVISION OF EMRO MARKETING COMPANY, Respondent.**

No. 84–2838.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1985.

Decided July 17, 1985.

Elinor Stillman, Associate Gen. Counsel, Washington, D.C., for petitioner.

Lawrence M. Cohen, Fox & Grove, Chicago, Ill., for respondent.

Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

CUMMINGS, Chief Judge.

The National Labor Relations Board (the "Board") seeks enforcement of its order finding that Speedway Petroleum, Division of Emro Marketing (the "Company" or "Speedway") had committed an unfair labor practice as defined in § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the Board-certified United Food and Commercial Workers International Union, Local No. 35 (the "Union"). The Company opposes enforcement, challenging the certification of the Union as the exclusive bargaining representative of the relevant unit of Company employees. We enforce the order.

I

The Union filed a petition with the Board on June 15, 1983, seeking a representation election in a unit of Company employees. The Regional Director conducted a secret ballot election on July 29, 1983. The tally of ballots revealed that eight ballots were cast, with four cast for representation by the Union, two cast against representation and with two ballots challenged. The Union challenged the ballots claiming that one employee, Kelly Corrigan, was no longer employed by the Company on July 1, 1983, the stipulated cutoff date for voter eligibility, and that another employee, James Smith, was not working for the Company

---

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

prior to expiration of the eligibility date (App. 43, 48).

The Regional Director conducted an administrative investigation of the challenges pursuant to 29 C.F.R. § 102.69(c)(1) (1984), and on August 19, 1983, issued his Report recommending that the challenges to the Smith and Corrigan ballots be sustained (App. 60–61). The challenge to employee Corrigan's ballot was sustained because she was determined to be a "casual employee who works on too sporadic a basis to have a community of interest with other employees" (App. 48). The Regional Director sustained the challenge to employee Smith's ballot because he was hired but not working as of the eligibility date since he had only engaged in certain "pre-work" activities [1] (App. 50). The Company filed exceptions to the Regional Director's report, contending that the Regional Director erred in sustaining the challenges and that an evidentiary hearing should have been conducted regarding the challenges. On March 10, 1984, the Board adopted the Regional Director's findings and recommendations and pursuant to § 9(a) of the NLRA, 29 U.S.C. § 159(a),[2] certified the Union as the exclusive bargaining representative of the Company's employees (reported in 269 N.L.R.B. 926 (1984)) (App. 106–107). Chairman Dotson dissented with respect to the sustaining of the challenge to Smith's ballot. *Id.*

Following certification, the Company refused the Union's request to bargain and to provide the Union with information and was charged by the Regional Director with having committed an unfair labor practice under § 8(a)(1) and (5) of the NLRA.[3] The Company admitted its refusal to bargain and to provide information, but contested the validity of the Board's certification of the Union. On September 14, 1984, the Board granted its General Counsel's motion for summary judgment and concluded that all issues raised by the Company in the unfair labor practice proceeding had been or could have been raised in the representation proceeding (272 N.L.R.B. No. 46 (1985)) (App. 135, 137). The Board ordered the Company to bargain with the Union upon request and to provide the Union with previously requested information. The Board seeks enforcement of its order pursuant to § 10(e) of the NLRA, 29 U.S.C. § 160(e).

The Company challenges the Union certification and thereby denies any violation of §§ 8(a)(1) and (5). It opposes enforcement on the grounds that 1) the Board erroneously ignored the parties' pre-election stipulation and applied Board election policies, 2) both employees Smith and Corrigan were in fact eligible to vote under the relevant Board election policies, 3) neither employee Smith nor Corrigan could be determined ineligible to vote without an evidentiary hearing, and 4) the Board erroneously failed to review all of the evidence relied upon by the Regional Director.

## II

The sole issue in this case is the validity of the Board's decision to sustain chal-

---

**1.** See *NLRB v. Tom Wood Datsun, Inc.,* 767 F.2d 350, 353 (7th Cir.1985), where this Court approved of the Board rule excluding pre-work activities such as filling out employment forms and undergoing orientation from the definition of "working" under the "hired and working" voting eligibility requirement.

**2.** Section 9(a) (29 U.S.C. § 159(a)) provides in pertinent part:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit

for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *.

**3.** Section 8(a)(1) and (5) (29 U.S.C. § 158(a)(1) and (5)) provides in pertinent part:

(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
　　*　　*　　*　　*　　*　　*
(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

lenges to Smith's and Corrigan's ballots and thereby certify the Union. If the Board's certification was correct, the Company's admitted refusal to bargain violated § 8(a)(1) and (5) of the NLRA. We would then be required to enforce the Board's September 14, 1984, Order. See *NLRB v. Tom Wood Datsun, Inc.*, 767 F.2d 350, 352, (7th Cir.1985). Furthermore, if this Court upholds the Board's ruling with regard to either of the two contested ballot challenges, we also must enforce since it will then be mathematically impossible for the Company to overturn the results of the election (the vote of uncontested ballots was 4 to 2 in favor of Union representation). See *NLRB v. Hoerner-Waldorf Corp.*, 525 F.2d 805, 807 n. 2 (8th Cir.1975).

The Company's first contention is that the Board ignored the parties' pre-election stipulation in applying Board election policies to sustain the ballot challenges in this case. The "Stipulation for Certification Upon Consent Election," entered into and approved by the Regional Director on June 8, 1983, described the voting unit as follows:

> All employees employed by the Employer at its Bethalto, Illinois facility, EXCLUDING station manager, office clerical and professional employees, guards and supervisors as defined in the Act (App. 6).

The Company argues that since it is uncontested that both Smith and Corrigan were hired as of the eligibility date, they are both "employees" within the ordinary meaning of that term and must be considered eligible to vote in order to effectuate the parties' unambiguous intent.

■ It is well settled that generally pre-election agreements are binding upon the Board. Once it has approved the agreement, the Board's role with respect to determining the bargaining unit and voter eligibility "is limited to construing the agreement according to contract principles" consistent with the intent of the parties. *Tidewater Oil Co. v. NLRB*, 358 F.2d 363, 365 (2d Cir.1966). See *NLRB v. Midwest Television, Inc.*, 370 F.2d 287, 288–289 (7th Cir.1966); *NLRB v. J.J. Collins' Sons, Inc.*, 332 F.2d 523, 525 (7th Cir.1964). Where the pre-election stipulation is ambiguous as to whether the employee whose ballot is challenged was included within the bargaining unit, it is clear that the stipulation is to be construed consistently with established or crystallized Board policies, see *NLRB v. New England Lithographic Co.*, 589 F.2d 29, 38 (1st Cir.1978); *Knapp-Sherrill Co. v. NLRB*, 488 F.2d 655, 659 (5th Cir.1974), certiorari denied, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53; *NLRB v. Joclin Manufacturing Co.*, 314 F.2d 627, 634–35 (2d Cir.1963), and with the Board's ordinary "community of interest"[4] standard for determining the bargaining unit in the absence of a pre-election agreement. See *NLRB v. Neuro Affiliates Co.*, 702 F.2d 184, 188 (9th Cir.1983); *Knapp-Sherrill*, 488 F.2d at 659; *NLRB v. Boston Beef Co.*, 652 F.2d 223, 226 (1st Cir.1981); *NLRB v. Mercy College*, 536 F.2d 544, 548 n. 11 (2d Cir.1976); *NLRB v. Midwest Television, Inc.*, 370 F.2d at 289.

■ Even if the pre-election stipulation clearly indicates which employees are eligible to vote, it has been held on numerous occasions that the inclusion or exclusion of employees in a unit per a pre-election stipulation may not contravene or violate the NLRA or established or settled Board policy. See *Neuro Affiliates*, 702 F.2d at 188; *NLRB v. Mercy Hospitals*, 589 F.2d 968, 972 (9th Cir.1978), certiorari denied, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458;

---

**4.** The "community of interest" standard is traditionally the touchstone of the Board's determination whether an individual employee or job classification should be included in a particular collective bargaining unit. The test includes "a consideration of whether the employee works at regularly assigned hours per week; performs duties similar to those of unit employees; and shares the same supervision, working conditions, wages, and fringe benefits as the unit employees." *NLRB v. Boston Beef Co.*, 652 F.2d 223, 226 (1st Cir.1981). See *Westchester Plastics of Ohio, Inc. v. NLRB*, 401 F.2d 903, 907–08 (6th Cir.1968). It is normally applied when the Board makes its own independent determination defining the appropriate bargaining unit or when the Board is deciding whether or not to approve a pre-election stipulation.

*Knapp-Sherrill,* 488 F.2d at 659; *J. Olson Machine Co.,* 196 N.L.R.B. 598 (1972); *The Tribune Company,* 190 N.L.R.B. 398, 399 (1971). The Board is prohibited, however, from applying the "community of interest" standard to change a result mandated by an unambiguous pre-election stipulation which does not contravene the Act or settled Board policy. See *Midwest Television,* 370 F.2d at 289; *Tidewater,* 358 F.2d at 366; *J.J. Collins' Sons,* 332 F.2d at 525. Courts have not viewed the multi-faceted inquiry under the "community of interest" standard as constituting an established Board policy. *Tidewater,* 358 F.2d at 366.

■ Application of the above rules to the present situation indicates that the Board was entirely correct in applying Board policies in its decision to sustain the Corrigan ballot challenge despite the existence of a pre-election stipulation.[5] The Board sustained the Corrigan ballot challenge because it found that Corrigan was a "casual employee." Whether we classify the Board policy which excludes from a bargaining unit employees who work on a sporadic and intermittent basis, *i.e.,* "casual employees," as a settled, established or crystallized Board policy, see *St. Elizabeth Community Hospital v. NLRB,* 708 F.2d 1436, 1444 (9th Cir.1983); *Justak Brothers & Co., Inc. v. NLRB,* 664 F.2d 1074, 1080 (7th Cir.1981); *NLRB v. Alamo Express, Inc.,* 430 F.2d 1032, 1035 (5th Cir.1970), certiorari denied, 400 U.S. 1021, 91 S.Ct. 584, 27 L.Ed.2d 633 (1971); *Myers Brothers, Inc.,* 218 N.L.R.B. 441 (1975), or merely as part of the "community of interest" standard, see *NLRB v. Boston Beef Co.,* 652 F.2d at 226–27, it was proper for the Board to apply the rule to determine Corrigan's eligibility because the pre-election stipulation here was ambiguous as to the inclusion of employee Corrigan.

It is far from clear from a plain reading of the pre-election stipulation's use of the term "All employees" that the parties evinced a clear intent to include casual employees within the bargaining unit. In similar circumstances courts have rejected the notion that use of general or all-inclusive terms in a pre-election stipulation evidences a clear intent to include all employees not expressly excluded by the broad term. In an opinion written by Judge Friendly, the Second Circuit affirmed the Board's exclusion of two employees' ballots where the pre-election stipulation literally provided for the inclusion of "all workers on the payroll during the test period except those expressly excluded." *Joclin,* 314 F.2d at 634. Although the two college student employees in question were not excluded by the stipulation, the court refused to infer an intent by the parties to include the employees, and instead ruled that unless the stipulation explicitly provided for the eligibility of the employees, the stipulation would be construed as incorporating established Board policy. *Id.* at 634–35. The Board's decision to exclude the two employees' ballots consequently was affirmed.

Similarly, in *Knapp-Sherrill Company v. NLRB,* the Fifth Circuit placed the burden of demonstrating intended eligibility under the pre-election stipulation (which would preclude Board application of the community of interest standard) on the party seeking to avoid application of the Board rules and policies:

> [a]bsent clear evidence of the parties' intention to apply some other test, the Board, we think, properly resolved this eligibility question in the same manner as in other cases * * * [i.e.] by determining the extent to which these employees share a community of interests with bargaining unit employees.

488 F.2d at 659. The court ruled that certain "temporary seasonal" employees were not clearly intended to be included in the pre-election stipulation term of "temporarily laid off" employees and therefore, consistent with uniform Board policy, affirmed the Board's determination of ineligi-

---

**5.** Because we affirm the Board's exclusion of employee Corrigan's ballot we do not consider the exclusion of employee Smith's.

bility of the employees. *Id.* at 659–60. The *Knapp-Sherrill* court considered it significant, in concluding that there was no evidence of an intent to include the "temporary seasonal" employees, that the parties utilized a standard eligibility clause. *Id.* at 659. It was revealed at oral argument that such a standard eligibility clause was utilized in the present case.

In *NLRB v. Boston Beef,* the First Circuit ruled that use of the term "regular part-time employees" in the pre-election stipulation did not evidence an intent to make eligible an employee who worked summers part-time (24 hours per week) under specialized working conditions. 652 F.2d at 225–26. Thus the Board was again allowed to rely on community of interest principles to resolve the ambiguity.

Finally we note that in the cases cited by the Company, where the Board was precluded from applying the community of interest standard, the pre-election stipulation contained relatively specific terminology which identified a particular class of employee rather than the broad and general term "[a]ll employees" involved in this appeal. See *NLRB v. Mike O'Connor Chevrolet-Buick-GMC Co.,* 512 F.2d 684, 686–87 (8th Cir.1975) (stipulation included "All new and used automobile salesmen" and Board erred in determining ineligible employee who spent most of his time selling trucks and had virtually no managerial duties); *J.J. Collins' Sons,* 332 F.2d at 523 (stipulation included "All paper cutting machine operators, all folding machine set-up men, and all bookbinders and their apprentices" and Board erred in determining as eligible a "stockhandler"); *Joclin,* 314 F.2d at 633–34 (stipulation excluded "office clericals" and Board erred in determining

as eligible what it termed "plant clerical" employees). It simply does not suffice for the Company to rely on these cases as supporting the argument that use of a broad catch-all term in a pre-election stipulation evidences a clear intent to make eligible any employee not expressly excluded by the stipulation.

 While other evidence of intent regarding the eligibility of a particular employee may come from outside the pre-election stipulation itself, see *Neuro Affiliates,* 702 F.2d at 188; *Knapp-Sherrill,* 488 F.2d at 659–60; *Harvey Russel,* 145 N.L.R.B. 1486, 1488 (1964), the only such evidence offered by the Company is its submission, after entering into the stipulation, of an *Excelsior* list [6] which included the names of both employees Smith and Corrigan. We agree with the position of the Board at oral argument that the submission of an *Excelsior* list, which is mandatory and is utilized in every representation election, is of little help in determining the intended scope of a pre-election stipulation. The submission of the list has never been held to preclude Union ballot challenges since it is required for the Union's benefit. To allow the use of extremely broad language in a standard pre-election stipulation combined with the naming of a specific employee in an *Excelsior* list to preclude a ballot challenge to that named employee would severely undermine the Board's important and proper role in regulating representation elections. See *Mosey Manufacturing Co. v. NLRB,* 701 F.2d 610, 614–15 (7th Cir.1983) (*en banc*). In light of the very broad scope of the stipulation here and the Company's failure to raise significant allegations before the Regional Director regarding the Union's understanding that Corrigan in her

---

**6.** In *Excelsior Underwear, Inc.,* 156 N.L.R.B. 1236 (1961), the Board held that shortly after the scheduling of an election, an employer must furnish a list of the names and addresses of all employees eligible to vote. If the employer fails to comply with the *Excelsior* requirement, the election will be set aside. See 2 T. Kheel, Labor Law § 7A.04[3] (1985). The Company did not attempt to enter a "Norris-Thermador" agreement, which must be distinguished from an *Excelsior* list. See *Smith & Smith Aircraft Co. v.*

*NLRB,* 735 F.2d 1215, 1216–17 (10th Cir.1984); *Norris-Thermador Corp.,* 119 N.L.R.B. 1301 (1958). A "Norris-Thermador" agreement is an agreement upon a list of particular individuals designated as eligible to vote in the election including the stipulation that the agreement conclusively resolves eligibility issues (so long as it does not contravene the NLRA or established Board policy). *Smith & Smith Aircraft, supra;* 2 T. Kheel, *supra,* at § 7A.04[2].

casual employee status was to be included in the stipulation's reference to "All employees" (Reply Br. 12 n. 6; App. 23–28, 73–74), it must be concluded that no material and substantial issue was raised below regarding the understanding of the parties. See *infra* p. 159. Consequently, the Board was not required to grant the Company a hearing on this issue, and it is too late to raise these potential fact questions on appeal. See *L.C. Cassidy & Son, Inc. v. NLRB*, 745 F.2d 1059, 1064 (7th Cir.1984); *J.J. Collins' Sons*, 332 F.2d at 524. In sum, it was proper for the Board to apply the "casual employee" rule in determining the eligibility of employee Corrigan.

■ We next consider whether the Board's determination that Corrigan was a "casual employee" was supported by substantial evidence. See *Mosey*, 701 F.2d at 615. The Company argues alternatively that under the Board's own standards Corrigan should have been ruled an eligible employee or that Corrigan's eligibility could not have been determined without an evidentiary hearing. These arguments are without merit. The Board's determination is amply supported by substantial evidence.

The undisputed facts before the Regional Director and the Board, supplied by Corrigan's and the Company's own affidavits, revealed that Corrigan was a part-time cashier for one and one-half years for the Company, working twenty to thirty-five hours per week, and that she accepted a new job elsewhere in late June of 1983 (App. 43, 44, 102). The employee agreed with the Company at that time to work under a completely new status where she would lose her guaranteed number of hours (App. 44, 97, 99) and would work on an "on-call" basis on short notice when such work did not interfere with her new job (App. 45–48, 99). She alone worked

under this arrangement (App. 47) and in fact did not work during the eligibility period of June 25 to July 1 or at any other time before the election (App. 43–44, 102). She did, however, work parts of three days in August pursuant to the new arrangement (App. 47). Based on these facts, the Board was justified in concluding that Corrigan worked on a "sporadic and intermittent" basis, *Justak Brothers*, 664 F.2d at 1080, and as such, was a casual employee who lacked a sufficient community of interest with other employees to include her in the bargaining unit.[7] See cases cited *supra* p. 156.

■ The cases cited by the Company do not indicate that the Board applied the wrong legal standard in reaching its eligibility determination and thereby inadequately considered Corrigan's prior work history and "reasonable expectation" of employment (Br. 21–23). See, *e.g.*, *Montgomery Ward & Co. v. NLRB*, 668 F.2d 291, 298 (7th Cir.1981); *New England Lithographic*, 589 F.2d at 32. None of the Company's cases deals with a deliberate change in employment status subsequent to the relevant work history. Thus evidence of prior work history would be of no relevance here. In most of the cited cases, see *NLRB v. General Tube Co.*, 331 F.2d 751, 752–53 (6th Cir.1964); *Whiting Corp. v. NLRB*, 200 F.2d 43, 45 (7th Cir.1952), the "reasonable expectation" test is employed to determine whether an employee who is absent from the job during the critical eligibility period due to a layoff, illness or leave of absence may be considered an employee at all. Other cases cited by Speedway are also inapposite in that they deal with the Board's attempt to devise an eligibility formula for a substantial group of "on-call" or intermittent employees, see *Berlitz School of Languages*, 231 N.L.R.B. 766 (1977);

7. Because of our ruling with respect to employee Corrigan, we need not address the Board's contention that the Company waived any argument regarding the preclusive effect of the pre-election stipulation with regard to employee Smith. See § 10(e) of the NLRA, 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–2083, 72 L.Ed.2d 398. The Company's argument before the Board (App. 73) that the term "[a]ll employees" in the stipulation means all persons hired as of the eligibility date regardless of Board policy or community of interest considerations would appear to apply to both employees even if the argument were specifically phrased in terms of only employee Corrigan.

*Cranston Hilton Inn,* 230 N.L.R.B. 186 (1977), or simply because they are distinguishable on their facts. See *Sears, Roebuck & Co.,* 193 N.L.R.B. 330, 331 (1971); *Columbus Plaza Motor Hotel,* 148 N.L.R.B. 1053, 1056–57 (1964). In summary, the analysis applied by the Board was correct.

The Company's contention that an evidentiary hearing was required fares no better. The merits of a ballot challenge may be decided on the basis of an administrative investigation unless the challenge raises substantial and material factual issues. 29 C.F.R. § 102.69(d). See *L.C. Cassidy,* 745 F.2d at 1065; *J.J. Collins' Sons,* 332 F.2d at 525. Here, Speedway does not even argue that there are facts in controversy relevant to Corrigan's case. Instead, it merely asserts that it should be allowed to develop facts with respect to Corrigan's prior work history and expectation of employment (Br. 25–26). In light of our holding that the Board did not err in its analysis, no purpose would be served by such a hearing. Because Corrigan became an on-call employee immediately prior to the eligibility period, and did not work during the eligibility period, nothing would be accomplished by holding a hearing to determine if she enjoyed a pattern of regular employment despite the on-call status. Contrast *Glynn Campbell, d/b/a Piggly Wiggly El Dorado Co.,* 154 N.L.R.B. 445, 451 (1965) (records submitted by employer demonstrated that on-call employees' work was sporadic and irregular and that employees were properly excluded from unit).

Finally, we refuse to consider Speedway's argument that the Board erred in the representation proceeding by failing to review all the evidence relied upon by the Regional Director. See *Prairie Tank Southern, Inc. v. NLRB,* 710 F.2d 1262, 1266 (7th Cir.1983). The Company waived the argument by failing to raise it at the Board unfair labor practice proceeding in either its Answer or in its response to the General Counsel's Motion for Summary Judgment. See *Woelke & Romero Framing,* 456 U.S. at 655–56, 102 S.Ct. at 2082–

83. No extraordinary circumstances excuse its failure to do so. See *id.*

The September 24, 1984, Order of the NLRB is enforced.