In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 18-3659 & 19-1146

UNIVERSITY OF CHICAGO,

*Petitioner/Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*,

*and*

LOCAL 743, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

*Intervening Respondent*.

———————————

Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board.
No. 13-CA-217957

———————————

ARGUED SEPTEMBER 18, 2019 — DECIDED DECEMBER 17, 2019

———————————

Before KANNE, HAMILTON, and BARRETT, *Circuit Judges*.

KANNE, *Circuit Judge*. When a group of employees wants
to collectively bargain with their employer, but the employer
believes the group is ineligible for collective bargaining under
the National Labor Relations Act, the two parties may address

the dispute in a hearing before the National Labor Relations Board. At the hearing, a party may present evidence only if that evidence would be enough to sustain the party's position. If the Board determines the party's proposed evidence would not sustain its position, then the Board must refuse to accept the evidence.

Here, a group of students who worked part time for the University of Chicago Libraries wanted to collectively bargain with their university employer. The University believed the student group was ineligible for collective bargaining under the Act, and the University wanted to introduce evidence to support this argument at a hearing before the Board. The Board determined that the University's proposed evidence would not sustain the University's position that the students were ineligible for collective bargaining. So the Board did not admit the University's evidence. Challenging that decision, the University petitioned our court for judicial review. The Board cross-applied for enforcement of its order finding the University should have bargained with its student employees.

We conclude that the Board's refusal to admit the University's evidence was not an abuse of discretion and did not violate the University's due process rights. We deny the University's petition and grant the Board's cross-application.

## I. BACKGROUND

The Act grants "employees" the right "to bargain collectively." 29 U.S.C. § 157. The Act also defines "employee" to include "any employee," subject to listed exceptions not relevant here. *Id.* § 152(3).

But not just any group of covered employees may band together for collective bargaining. The Board has authority to determine the appropriate unit—that is, group of employees—who are eligible to collectively bargain. *Id.* § 159(b).

An employee, group of employees, or someone acting on their behalf may file with the Board a petition seeking the group's representation in collective bargaining with their employer. If the employer disagrees with the employees' proposed representation and there is "reasonable cause to believe a question of representation … exists," then the Board will hold "an appropriate hearing" before the employees elect a representative. *Id.* § 159(c).

This pre-election hearing is not open season to present any arguments a party wishes to make. Instead, its purpose is to determine whether a "question of representation" exists. One qualifying "question of representation" is whether the petition "concern[s] a unit appropriate for the purpose of collective bargaining." 29 C.F.R. § 102.64(a). To help resolve that question, parties may, under certain circumstances, introduce evidence of "significant facts that support the party's contentions and are relevant to the existence of a question of representation." *Id.* § 102.66(a). But if the evidence a party wants to introduce "is insufficient to sustain the proponent's position, the evidence shall not be received." *Id.* § 102.66(c).

In May 2017, the International Brotherhood of Teamsters Union Local No. 743 ("Local 743") filed a petition with the Board. Local 743 sought to represent—for collective bargaining purposes—a unit of part-time student employees of the University of Chicago Libraries.

The University responded with a "statement of position." In it, the University contended that the proposed unit of student employees was not appropriate for collective bargaining. The University gave three reasons, only one of which remains relevant: the students are temporary employees who do not manifest an interest in their employment terms and conditions that is sufficient to warrant collective-bargaining representation.[1]

In advancing this argument, the University acknowledged that it relied on prior adjudicative decisions that the Board ultimately overruled in 2016. *See Trs. of Columbia Univ.*, 364 N.L.R.B. No. 90, 2016 WL 4437684 (Aug. 23, 2016). The University nonetheless argued that the Board should overrule its prevailing decision on the matter.

Hoping to back its arguments with evidence, the University followed a procedure set out in 29 C.F.R. § 102.66(c) to submit an "offer of proof"—a description of the evidence the University would present to the Board to show that student employees are not entitled to collectively bargain. (Pet'r's App. at SA-51–59.) Specifically for its position that student employees may not collectively bargain because they are "temporary or casual" employees, the University stated that the tenure of part-time student employees is "inherently temporary"—because "student employment ends when students graduate or leave the University for other reasons." (Pet'r's App. at SA-57.) The University also described evidence

---

[1] The University also argued that students are not "employees" under the Act and that collective bargaining would interfere with the educational relationship between the students and their university. The University does not pursue these arguments on appeal.

showing that most students remained in their positions for less than one year and could hold those positions only as students.

At a pre-election hearing on May 17, 2017, the Board's hearing officer explained that, "after reviewing the proposed evidence and testimony the [University] would put on to support its arguments and the offer of proof," the Board would not take evidence because "the evidence proposed as well as the testimony all deal with established [Board] law." (Pet'r's App. at SA-64.) As a result, the University was not allowed to present its proposed evidence; nor was it allowed a full hearing on whether the part-time student library employees as a group are an inappropriate collective-bargaining unit.

The Board's regional director echoed the hearing officer's assessment, concluding that "the evidence described is insufficient to sustain the [University's] contentions" and, "therefore, consistent with Section 102.66(c), I instructed the hearing officer to decline to accept evidence from the University related to its contention[s]." (Pet'r's App. at SA-2.) The regional director ordered an election for representation of the unit proposed by Local 743: "[a]ll part-time hourly-paid student employees of the [University of Chicago Libraries]," excluding all "temporary employees."[2]

The University asked the Board to stay the election and review the regional director's decision. The Board denied this

---

[2] The unit definition also excluded "[a]ll employees represented by other labor organizations and covered by other collective bargaining agreements," "professional employees," and "supervisory and managerial employees as defined by the National Labor Relations Act." (Pet'r's Br. at 5.)

request, concluding that "the facts asserted in the [University's] offer of proof are insufficient to warrant a conclusion that the library clerks should be deemed ineligible as temporary or casual employees." (Pet'r's App. at SA-76 n.1.)

Following this decision, the unit of student library employees elected Local 743 as their collective-bargaining representative. The University objected to the election on the ground that the University was denied a hearing on whether the students qualified as employees who could collectively bargain. The Board rejected that objection and certified the election results. (Pet'r's App. at SA-158 & 188.)

Local 743 tried to bargain with the University, but the University refused. The Board's general counsel then issued an unfair-labor-practice complaint alleging that the University violated the National Labor Relations Act. The Board's counsel also moved for summary judgment on that claim. *See* 29 U.S.C. § 158(a)(5), (1). The Board granted the motion and found that the University violated the Act by refusing to bargain with Local 743. The Board also found that all representation issues the University raised had been resolved in the underlying representation proceeding and no special circumstances warranted reconsideration of those issues.

The University petitioned our court for review of the Board's initial refusal to admit the University's offered evidence. The University maintains that its student library employees are temporary or casual employees who may not collectively bargain "as a matter of law." (Pet'r's Br. at 17.) The Board filed a cross-application for enforcement of its order.

## II. THE BOARD'S CASES ON STUDENT EMPLOYEES

Before we turn to the parties' arguments, a bit of history on the Board's classification of student employees is necessary to understand the University's position. It is safe to say that over the last several decades, the Board has been consistently inconsistent about whether students employed by their educational institution are "employees" entitled to collectively bargain under the National Labor Relations Act.

In the 1970's, the Board held that student employees could not collectively bargain with their universities because they are primarily students. *See Leland Stanford Junior Univ.*, 214 N.L.R.B. 621 (1974); *St. Clare's Hosp.*, 229 N.L.R.B. 1000 (1977) (residents and medical interns); *Cedars-Sinai Med. Ctr.*, 223 N.L.R.B. 251 (1976) (same). Applying this reasoning in *San Francisco Art Institute*, the Board determined that units of students employed at their educational institutions in non-academic positions were also inappropriate units for collective bargaining. *S.F. Art Inst.*, 226 N.L.R.B. 1251, 1252 (1976) (rejecting a unit of student janitors); *Saga Food Serv. of Cal., Inc.*, 212 N.L.R.B. 786, 787 n.9 (1974) (rejecting a unit of student cafeteria employees).

More than 20 years later, the Board changed course and rejected the argument that student employees could not collectively bargain simply because of their status as students. The Board decided that students in graduate and residency programs are entitled to collectively bargain. *See Bos. Med. Ctr. Corp.*, 330 N.L.R.B. 152 (1999) (rejecting argument that medical interns and residents are not "employees" because they are primarily students); *N.Y. Univ.*, 332 N.L.R.B. 1205 (2000) (same for graduate students).

Four years later, in *Brown University*, the Board reversed course again, holding that graduate students employed at their universities are not "employees" because they are primarily students and collective bargaining would infringe on their educational relationships with their universities. *See Brown Univ.*, 342 N.L.R.B. 483 (2004).

Finally, in 2016, the Board decided *Columbia University*. This case established that student employees "who have a common-law employment relationship with their university" are "employees" entitled to collectively bargain. *Columbia Univ.*, 2016 WL 4437684, *2 (considering graduate and undergraduate student assistants employed by their university).

In so holding, the Board explicitly rejected the idea that students are not employees simply because they are "primarily students." *Id.* at *1 (quoting *Brown Univ.*, 342 N.L.R.B. at 487). The Board also explicitly overruled past decisions, including *Brown University* and *San Francisco Art Institute*, and rejected the argument that a bargaining unit composed of student employees is inappropriate because of the inherently short-term nature of student employment. *See id.* at *1, *24 n.130. When addressing Columbia University's argument that "all the student assistants here are temporary"—and therefore unable to bargain collectively—the Board "made clear that finite tenure alone cannot be a basis on which to deny bargaining rights." *Id.* at *24.

In the end, the Board determined that short-term student employees may form a collective-bargaining unit. Stated differently, similarly situated short-term student employees are

not "temporary employees" ineligible for collective bargaining. *Id*. at \*2, \*14, \*24–25.[3]

### III. ANALYSIS

The University challenges only one aspect of the proceedings before the Board: the Board's decision to exclude the University's proposed evidence from the pre-election hearing. This is a narrow issue involving limited review: we ask whether the Board abused its discretion in excluding the evidence. *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012).

Although the University contends that the Board made a legal error by adhering to its prevailing precedent in *Columbia University*, the University does not ask us to evaluate or invalidate *Columbia University*. Instead, the University presents two arguments: First, the Board abused its discretion by incorrectly applying its evidentiary rule. And second, this incorrect application amounted to a violation of due process. We find neither argument convincing.

---

[3] The Board appears poised to change its position yet again. On September 23, 2019, the Board issued a Notice of Proposed Rulemaking regarding the "[n]onemployee status of university and college students working in connection with their studies." *Jurisdiction—Nonemployee Status of University and College Students Working in Connection with Their Studies*, 84 Fed. Reg. 49,691 (proposed Sept. 23, 2019) (to be codified at 29 C.F.R. pt. 103). The proposed rule states that "[s]tudents who perform any services, including, but not limited to, teaching or research, at a private college or university in connection with their undergraduate or graduate studies are not employees within the meaning of Section 2(3) of the Act." *Id.* at 49,699.

A. *The Board Properly Applied its Rule*

Before the Board, the University gave two reasons why the student employees were not an appropriate group for collective bargaining: First, the student library employees are temporary or casual employees. And second, temporary student employees lack a sufficient interest in the terms and conditions of their employment. These assertions, the University contends, raise three questions of representation that required an evidentiary hearing under the Board's rules: (1) whether the student library employees are temporary or casual employees; (2) whether a unit composed of only temporary or casual employees is an appropriate unit for collective bargaining because they lack a sufficient interest in the terms and conditions of their employment; and (3) if the students are temporary employees, whether these students are excluded from Local 743's proposed unit definition.

The Board, however, disagreed that the University presented any questions of representation and accordingly declined to take the University's evidence under Rule 102.66(c). The University "acknowledges the validity" of Rule 102.66 and disclaims any challenge to the Rule itself. (Pet'r's Br. at 16 n. 7.) Instead, the University maintains that the Board misapplied its Rule. Specifically, the University argues that it raised three questions of representation and offered evidence sufficient to sustain its position the Board, so the Board acted unreasonably in declining to admit the University's proffered evidence. We will address each of the University's three alleged questions of representation in turn.

1. *Whether the Student Library Employees are Temporary Employees*

The University first contends that it raised a question of representation about whether its part-time student library employees are "temporary or casual" employees. Before turning to the merits of this argument, it is helpful to explain the significance of a "temporary or casual" employee.

"Temporary" and "casual" are terms of art the Board uses to determine whether employees with short-term or intermittent tenures should be included in a larger bargaining unit with permanent or regular employees—because the short-term or intermittent employees may lack a sufficient community of interest with the rest of the unit. *See N.L.R.B. v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985); *see also Marian Med. Ctr.*, 339 N.L.R.B. 127, 128 (2003); *N.L.R.B. v. Speedway Petroleum*, 768 F.2d 151, 157 (7th Cir. 1985).

The University did not argue to the Board that specific employees should have been excluded from the unit, or that a subset of the employees lacked a community of interest with the unit as a whole. Instead, in its offer of proof, the University asserted that all of its student library employees are "inherently temporary" because "student employment ends when students graduate or leave the University for other reasons." (Pet'r's App. at SA-57.) It also described statistical evidence to show that the student employees do indeed have a temporary tenure.

In the University's own words, all the offered evidence was to show that "virtually all of the members of the proposed unit are short-term, temporary and/or casual employees" who are foreclosed from bargaining collectively. *Id*. The

University now argues this presented a question of representation about whether the students are temporary or casual employees.

The fatal flaw in the University's argument is that, under prevailing Board law, short-term student employees may collectively bargain. Recall that in *Columbia University*, the Board "made clear that finite tenure alone cannot be a basis on which to deny bargaining rights." 2016 WL 4437684, at *24. But that's precisely the position the University sought to support with its offered evidence—evidence describing the finite tenures of its student employees.

Puzzlingly, although the University's argument depends on a legal assertion that is irreconcilable with *Columbia University*, the University does not ask us to override that precedential decision. (Pet'r's Br. at 2 n.2.) We thus do not question *Columbia University*.

And under *Columbia University*, the University's assertion that the students are temporary employees did not raise a question of representation regarding the appropriateness of a unit of part-time student employees. Consistent with *Columbia University* and Rule 102.66(c), the Board did not abuse its discretion in rejecting evidence that could not have supported the University's argument under prevailing law.

2. *Whether a Unit of Only Part-Time Student Employees is an Appropriate Unit for Collective Bargaining Because They Lack a Sufficient Interest in the Terms and Conditions of Their Employment*

*Columbia University* also conflicts with the University's argument that part-time student employees do not manifest a sufficient interest in the terms and conditions of their

employment to warrant union representation. (Pet'r's App. at SA-52 (citing *S.F. Art Instit.*, 226 N.L.R.B. 1251, and *Saga Food Serv. of Cal., Inc.*, 212 N.L.R.B. 786).)

The University maintains that union representation for employment that is sporadic, temporary, or seasonal in nature would not further the interests of collective bargaining. To the Board, the University explained that it sought to introduce evidence that would lead the Board to overrule *Columbia University*, "restore the validity of *San Francisco Art Institute*," (Pet'r's App. at SA-162), and thus conclude "that it would not advance the interests of the Act to allow students to form their own independent bargaining unit." (Pet'r's Br. at 22.)

But the Board was not obliged to receive evidence to support a position that is unsustainable under prevailing Board law. The University invokes the reasoning of *San Francisco Art Institute*—specifically, that being a student in short-term employment with the school necessarily prevents student employees from having sufficient interest in the terms and conditions of their employment to bargain collectively. 226 N.L.R.B. at 1252. But the University does not grapple with the holding or reasoning of *Columbia University*, which overruled *San Francisco Art Institute* and declared that student employees' tenure is "not so ephemeral as to vitiate their interest in bargaining over terms and conditions of employment." *Columbia Univ.*, 2016 WL 4437684, at *24–25. As a result, the University relied on legal premises that are directly contrary to current Board law. We think the Board acted well within its discretion in rejecting the University's evidence as insufficient to sustain its position that part-time student employees do not manifest a sufficient interest in the terms and conditions of their employment.

Before we move on to the University's argument about the unit definition, we pause to address an argument the University raises for the for the first time on appeal. In its briefing, the University points to Board decisions involving part-time, *non-student* employees where the Board considered whether the employees have a "real continuing interest in the terms and conditions of employment offered by the employer." *See DIC Entm't, L.P.*, 328 N.L.R.B. 660 (1999) (storyboard editors); *see also Macy's East*, 327 N.L.R.B. 73 (1998) (seasonal costume makers). The University contends that, had the Board considered evidence of the temporary nature of its student library employees, the Board may have "concluded, as the Board did in [*Macy's East*], that the proposed bargaining unit was not appropriate." (Reply Br. at 9.) This is closely linked with the University's argument on appeal that, before the Board, it "sought to demonstrate that its part-time student [l]ibrary employees bear the material attributes of temporary or casual employees, separate and apart from their status as students." (Reply Br. at 13–14.)

The University's attempt to repackage its arguments before the Board as "separate and apart" from its student employees' status as students is unpersuasive and utterly unsupported by its statement of position and offer of proof. Before the Board, the University relied on *San Francisco Art Institute* and *Saga Foods*, two cases involving *students* as support for its arguments, not on *DIC Entertainment* or *Macy's East* or any cases outside of the student context. The Board cannot consider whether to admit evidence to support a legal argument that the University did not make below. As we noted above, the Board did not abuse its discretion in excluding evidence based on the arguments the University *did* present to the Board.

In sum, the University's assertion that part-time student employees cannot form "a unit appropriate for the purpose of collective bargaining" is a position that was addressed in and foreclosed by *Columbia University*. 29 C.F.R. § 102.64(a). Thus, even if the factual allegations in the University's offer of proof were taken as true, they would not have altered the Board's analysis under governing law. And under this governing law, part-time students may collectively bargain.

3. *Whether the Student Employees are Excluded From the Proposed Unit Definition*

That brings us to the final question of representation the University believes it raised: whether the student employees are covered by Local 743's proposed unit definition, which explicitly excludes "temporary employees." The University seems to rely on this reasoning: All student employees are necessarily "temporary employees." Thus, the student library employees are "temporary employees" explicitly excluded from the defined unit. [4]

We cannot accept this argument. For one thing, the first premise is untrue under *Columbia University*, which recognized that not all student employees are temporary employees. And more holistically, under the University's position, all the employees who Local 743 wanted to represent in the student library employee unit would be excluded from that unit, because they are all students working part-time. We thus

---

[4] We note, however, that this is only a guess. The University's brief is replete with legal assertions unburdened by case citations or legal support. As with this argument, we were left to fill in gaps and connect the dots between the University's various arguments before the Board and on appeal.

reject the University's contention that the unit definition explicitly excluded all its proposed members or that this contention raised a question of representation.

In sum, the University misses the mark in its efforts to persuade us that it presented three legitimate questions of representation about the appropriateness of collective bargaining for its student employees. It did not. In reality, the University relied on legal premises that are indisputably foreclosed by *Columbia University*, and the Board did not abuse its discretion by applying its established precedent and declining to admit the University's evidence under Rule 102.66(c). But our analysis does not end with this conclusion. The University presents a final argument about the Board's refusal to admit its evidence: that declining to do so violated the University's due process rights.

B. *The Board Did Not Violate the University's Due Process Rights*

We turn to the University's final argument that the Board violated its due process rights by disallowing the University to offer evidence at the pre-election hearing. The University offers two reasons, neither of which we find compelling.

First, the University asserts that—in all cases—"the Act *requires* the Board to conduct an 'appropriate hearing' before an election" takes place. (Pet'r's Br. at 24.) This assertion conflicts with the Act's text, which conditions an appropriate hearing on "reasonable cause to believe that a question of representation … exists." 29 U.S.C. § 159(c). As the Board determined, the University presented no reasonable question of representation under governing Board law.

Second, the University asserts that the "due process rights of parties to representation hearings include the right to make an evidentiary record at a pre-election hearing," (Pet'r's Br. at 24); and the University was entitled to present evidence at the pre-election hearing because it raised "substantial and material factual issues" about the student library employees' representation. *Id*. at 23.

Even assuming, *arguendo*, that parties who raise a substantial and material factual issue have a right to present evidence at a pre-election hearing, the University cannot make a *prima facie* case that it raised "substantial material and factual issues" about the ability of its student library employees to collectively bargain. That's because the issues the University raised are immaterial under prevailing Board law, and the University's position depends on the reasoning of overruled Board decisions.

Thus, by rejecting the University's evidence and declining a more exhaustive hearing, the Board did not violate the University's due process rights.

## IV. CONCLUSION

The University relies on a legal assertion that its student library employees cannot collectively bargain because they are temporary employees who do not manifest a sufficient interest in the terms and conditions of their employment. Those categorical assertions were explicitly rejected by the Board in *Columbia University*, which the University does not ask us to invalidate. The Board did not abuse its discretion in adhering to Board precedent and refusing to admit the University's proposed evidence, which did not support the University's position under prevailing Board law. Nor has the University

shown that the Board violated the University's due process rights when applying Rule 102.66(c). We therefore DENY the University's petition for review and GRANT the Board's cross-application to ENFORCE its decision and order.